**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

CHARLES GENTRY, on behalf of
himself individually and on behalf
of all others similarly situated,

**CASE NO. _____**

Plaintiff,

**JURY DEMAND**

v.

ARIETIS HEALTH, LLC,

Defendant.

_____/

## CLASS ACTION COMPLAINT

Plaintiff CHARLES GENTRY ("Plaintiff") brings this Class Action Complaint ("Complaint") against Defendant ARIETIS HEALTH, LLC, ("Arietis" or "Defendant") as an individual and on behalf of all others similarly situated, and alleges, upon personal knowledge as to his own actions and his counsels' investigation, and upon information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

1.      This Class Action arises from a recent cyberattack resulting in a data breach of sensitive information in the possession and custody and/or control of Defendant (the "Data Breach").

2.      The Data Breach resulted in the unauthorized disclosure, exfiltration, and theft of consumers' highly personal information, including names, Social Security numbers, and date of birth ("personal identifying information" or "PII"),

and medical record numbers, patient account numbers, health insurance information, diagnosis, and treatment information ("protected health information" or "PHI"). Plaintiff refers to both PII and PHI collectively as "Sensitive Information."

3.      Arietis' breach differs from typical data breaches because it affects consumers who had no relationship with Arietis, never sought one, and never consented to Arietis collecting and storing their information.

4.      On information and belief, the Data Breach occurred on May 31, 2023. Arietis did not become aware of suspicious activity on its network until its third-party vendor informed Defendant of the Data Breach.

5.      On October 2, 2023, Arietis finally notified state Attorneys General and many putative Class Members about the widespread Data Breach ("Notice Letter"). Plaintiff's Notice Letter is attached as **Exhibit A**. Arietis waited almost five months before informing Class Members about the Data Breach, even though Plaintiff, the Class Members, and a staggering 55 health practices had their most sensitive personal information accessed, exfiltrated, and stolen as a result of the Data Breach,[1] causing them to suffer ascertainable losses in the form of the loss of the benefit of their bargain and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.

---

[1] Firm Notifies Patients of 55 Health Practices of MOVEit Hack, https://www.bankinfosecurity.com/northstararietis-breach-a-23221 (last visited October 17, 2023)

6.     Arietis' Breach Notice obfuscated the nature of the breach and the threat it posted—refusing to tell its consumers how many people were impacted, how the breach happened on Arietis' systems, or why it took Arietis almost five months to begin notifying victims that hackers had gained access to highly private Sensitive Information.

7.     Defendant's failure to timely detect and report the Data Breach made its consumers vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their Sensitive Information.

8.     Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII and PHI misuse.

9.     In failing to adequately protect Plaintiff's and the Class's Sensitive Information, failing to adequately notify them about the breach, and by obfuscating the nature of the breach, Defendant violated state and federal law and harmed an unknown number of its current and former consumers.

10.     Plaintiff and members of the proposed Class are victims of Defendant's negligence and inadequate cyber security measures. Specifically, Plaintiff and members of the proposed Class trusted Defendant with their Sensitive Information. But Defendant betrayed that trust. Defendant failed to properly use up-to-date security practices to prevent the Data Breach.

11.     Plaintiff Charles Gentry is a Data Breach victim.

12.     Accordingly, Plaintiff, on his own behalf and on behalf of a class of similarly situated individuals, brings this lawsuit seeking injunctive relief, damages, and restitution, together with costs and reasonable attorneys' fees, the calculation of which will be based on information in Defendant's possession.

## PARTIES

13.     Plaintiff, Charles Gentry, is a natural person and citizen of Kentucky, where he intends to remain. Plaintiff Gentry is a Data Breach victim, receiving the Breach Notice in October 2023.

14.     Defendant, Arietis Health LLC, is a limited liability company corporation incorporated in Delaware, with its principal place of business 13500 Powers Court, Suite 230, Fort Myers, Florida 33912.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class. Plaintiff and Defendant are citizens of different states.

16.     This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District and does substantial business in this District.

17.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## STATEMENT OF FACTS

*Arietis*

18.    Arietis is a self-proclaimed industry leader providing revenue cycle management services for healthcare providers. According to its website, Arietis "aim[s] higher to deliver patient-first revenue cycle solutions" and touts its company values to include being "integrity driven: always be honest and ethical, follow through on commitments, and adhere to policies and procedures."[2] Arietis boasts a total annual revenue of $44.5 million.[3]

19.    Arietis' software services are specialized for healthcare providers who oversee highly sensitive data. Arietis thus must oversee, manage, and protect the Sensitive Information of its clients' patients, Arietis' consumers.

20.    On information and belief, these third-party consumers, whose Sensitive Information was collected by Arietis, do not directly do any business with Arietis.

---

[2] Abous us, Arietis, https://www.arietishealth.com/company/about/ (last visited October 17, 2023).
[3] Arietis, Zoominfo, https://www.zoominfo.com/c/arietis-health/540768145 (last visited October 17, 2023).

21.     Arietis boasts on its website that that it is 100% HIPAA compliant, is "committed to being your trusted healthcare partner" and takes "extreme measures to provide you with the highest quality compliance, data security and



revenue integrity program":

22.     As a self-proclaimed leader in its industry handling highly sensitive aspects of its clients' business, Arietis understood the need to protect its client's patient's data and prioritize its data security.

23.     Despite recognizing its duty to do so, on information and belief, Arietis has not implemented reasonably cybersecurity safeguards or policies to protect its consumers' Sensitive Information or supervised its IT or data security agents and employees to prevent, detect, and stop breaches of its systems. As a result, Arietis leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to consumers' Sensitive Information.

***The Data Breach***

24.     Plaintiff is unsure how Arietis got his information but assumes his healthcare provider provided Arietis with his Sensitive Information, including but not limited to his name, date of birth, Social Security number, medical records, patient account number, health insurance information, diagnosis, and treatment information.

25.     On information and belief, Defendant collects and maintains consumers' Sensitive Information in its computer systems.

26.     In collecting and maintaining Sensitive Information, Defendant implicitly agrees that it will safeguard the data using reasonable means according to its internal policies, as well as state and federal law.

27.     According to the Breach Notice, on May 31, 2023, Arietis was informed by its third-party vendor that there was a "critical vulnerability affecting [the third-party software Arietis utilized] to securely transfer data." Following an internal investigation that concluded on July 26, 2023, Arietis discovered that

"unauthorized actors had access to Arietis Health's MOVEit server" and "may have acquired certain files which contained data belonging to patients of the Healthcare Entities."[4]

28.    In other words, Arietis' investigation revealed that its cyber and data security systems were completely inadequate and allowed cybercriminals to obtain files containing a treasure trove of thousands of its consumers' highly private Sensitive Information.

29.    Through its inadequate security practices, Defendant exposed Plaintiff's and the Class's Sensitive Information for theft and sale on the dark web.

30.    Upon information and belief, the notorious Clop ransomware gang was responsible for the cyberattack.[5] Clop is one of the most active ransomware actors, having breached over 730 organizations.[6] Arietis, a self-touted 'leader in the healthcare software industry, knew or should have known of the tactics that groups like Clop employ.

31.    With the Sensitive Information secured and stolen by Clop, the hackers then purportedly issued a ransom demand to Arietis. However, Arietis has provided no public information on the ransom demand or payment. An example

---

[4] Notice of Security Incident, Arietis Health, https://www.arietishealth.com/notice-of-security-incident/ (last visited October 17, 2023).
[5] Clop Gang Stolen Data From Major North Carolina Hospitals, Security Affairs, https://securityaffairs.com/150949/cyber-crime/north-carolina-hospitals-data-breach.html (last visited September 28, 2023).
[6] Microsoft Acquired AI-Powered Nuance, Victim of a Cyber Attack, Cybersecurity Express, https://thecyberexpress.com/microsoft-nuance-cyber-attack-clop-ransomware/ (last visited September 28, 2023).

of Clop' standard demand ransom for the 'critical vulnerability' found in the third-party software utilized by Arietis page is displayed below:

*DEAR COMPANIES.*

*CLOP IS ONE OF TOP ORGANIZATION OFFER PENETRATION TESTING SERVICE AFTER THE FACT.*

*THIS IS ANNOUNCEMENT TO EDUCATE COMPANIES WHO USE PROGRESS MOVEIT PRODUCT THAT CHANCE IS THAT WE DOWNLOAD ALOT OF YOUR DATA AS PART OF EXCEPTIONAL EXPLOIT. WE ARE THE ONLY ONE WHO PERFORM SUCH ATTACK AND RELAX BECAUSE YOUR DATA IS SAFE.*

*WE ARE TO PROCEED AS FOLLOW AND YOU SHOULD PAY ATTENTION TO AVOID EXTRAORDINARY MEASURES TO IMPACT YOU COMPANY.*

*IMPORTANT! WE DO NOT WISH TO SPEAK TO MEDIA OR RESEARCHERS. LEAVE.*

*STEP 1 - IF YOU HAD MOVEIT SOFTWARE CONTINUE TO STEP 2 ELSE LEAVE.*
*STEP 2 - EMAIL OUR TEAM UN...................... ..4 OK*
*STEP 3 - OUR TEAM WILL EMAIL YOU WITH DEDICATED CHAT URL OVER TOR*

*WE HAVE INFORMATION ON HUNDREDS OF COMPANIES SO OUR DISCUSSION WILL WORK VERY SIMPLE*

*STEP 1 - IF WE DO NOT HEAR FROM YOU UNTIL JUNE 14 2023 WE WILL POST YOUR NAME ON THIS PAGE*
*STEP 2 - IF YOU RECEIVE CHAT URL GO THERE AND INTRODUCE YOU*
*STEP 3 - OUR TEAM WILL PROVIDE 10% PROOF OF DATA WE HAVE AND PRICE TO DELETE*
*STEP 4 - YOU MAY ASK FOR 2-3 FILES RANDOM AS PROOF WE ARE NOT LYING*
*STEP 5 - YOU HAVE 3 DAY TO DISCUSS PRICE AND IF NO AGREEMENT YOU CUSTOM PAGE WILL BE CREATED*
*STEP 6 - AFTER 7 DAYS ALL YOU DATA WILL START TO BE PUBLICATION*
*STEP 7 - YOU CHAT WILL CLOSE AFTER 10 NOT PRODUCTIVE DAY AND DATA WILL BE PUBLISH*

*WHAT WARRANTY? OUR TEAM HAS BEEN AROUND FOR MANY YEARS. WE HAVE NOT EVEN ONE TIME NOT DO AS WE PROMISE. WHEN WE SAY DATA IS DELETE IT IS CAUSE WE SHOW VIDEO PROOF. WE HAVE NO USE FOR FEW MEASLE DOLLARS TO DECEIVE YOU.*

*CALL TODAY BEFORE YOUR COMPANY NAME IS PUBLISH HERE.*

*FRIENDLY CLOP.*

*PS. IF YOU ARE A GOVERNMENT, CITY OR POLICE SERVICE DO NOT WORRY, WE ERASED ALL YOUR DATA. YOU DO NOT NEED TO CONTACT US. WE HAVE NO INTEREST TO EXPOSE SUCH INFORMATION.*

32.     On July 14, 2023, the presumed deadline of Clop's ransom demand, Clop released information obtained from the Breach on a data leak page.[7] This tactic of exfiltrating the Sensitive Information for a ransom demand before posting onto a data leak page if the ransom demand is not met is something Clop, one of the most successful and lucrative ransomware gangs, is well known for.[8] Arietis



knew or should have known of the tactics that groups like Clop employ.

33.     On or around September 28, 2023 –almost five months after the Breach occurred – Arietis finally notified Plaintiff and Class Members about the Data Breach.

34.     Despite its duties and alleged commitments to safeguard Sensitive Information, Defendant did not in fact follow industry standard practices in securing consumers' Sensitive Information, as evidenced by the Data Breach.

35.     Companies suffering from Data Breaches typically will, in response to a Breach, make assurances to its victims regarding the implementation of additional steps and security measures to prevent another Data Breach from taking place. Not Arietis. Instead, Arietis puts the onus of protecting the Sensitive

---

[7] Falconfeeds, X f/k/a twitter, https://twitter.com/FalconFeedsio/status/1679837317438091264 (last visited October 17, 2023).
[8] Ransomware spotlight: Clop, Trendmicro, https://www.trendmicro.com/vinfo/us/security/news/ransomware-spotlight/ransomware-spotlight-clop (last visited October 17, 2023).

Information it collected from its consumers onto the victims themselves, stating that it lists "additional steps affected individuals can take to protect their information."[9]

36.    Through its Breach Notice, Defendant recognized the actual imminent harm and injury that flowed from the Data Breach, so it encouraged breach victims to "review your account statements and credit reports closely" and to "promptly report any fraudulent activity or any suspected incidence of identity theft to proper law enforcement authorities, your state attorney general, and/or the Federal Trade Commission (FTC)."[10]

37.    Arietis further recognized through its Breach Notice, its duty to implement reasonable cybersecurity safeguards or policies to protect its consumers' Sensitive Information, promising that "privacy and protection of the information it maintains is a top priority for Arietis Health, and Arietis Health deeply regrets any inconvenience or concern this incident may cause."[11]

38.    Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's Sensitive Information. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to

---

[9] Notice of Security Incident, Arietis Health, https://www.arietishealth.com/notice-of-security-incident/ (last visited October 17, 2023).
[10] *Id.*
[11] *Id.*

create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

39. On information and belief, Arietis has several months of complimentary credit monitoring services to victims, which does not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the breach involves Sensitive Information that cannot be changed.

40. Even with several months' worth of credit monitoring services, the risk of identity theft and unauthorized use of Plaintiff's and Class Members' Sensitive Information is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

41. On information and belief, Defendant failed to adequately train and supervise its IT and data security agents and employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over its consumers' Sensitive Information. Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the Sensitive Information.

***The Data Breach was a Foreseeable Risk of which Defendant was on Notice.***

42. Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the healthcare industry preceding the date of the breach.

43. In light of recent high profile data breaches at other healthcare partner and provider companies, Defendant knew or should have known that its electronic records and consumers' Sensitive Information would be targeted by cybercriminals.

44. In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[12] The 330 reported breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[13]

45. Indeed, cyberattacks against the healthcare industry have become increasingly common for over ten years, with the FBI warning as early as 2011 that cybercriminals were "advancing their abilities to attack a system remotely" and "[o]nce a system is compromised, cyber criminals will use their accesses to obtain PII." The FBI further warned that that "the increasing sophistication of cyber criminals will no doubt lead to an escalation in cybercrime." [14]

46. Cyberattacks on medical systems and healthcare partner and provider companies like Defendant have become so notorious that the FBI and

---

[12] 2021 Data Breach Annual Report, ITRC, chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.wsav.com/wp-content/uploads/sites/75/2022/01/20220124_ITRC-2021-Data-Breach-Report.pdf (last visited June 5, 2023).

[13] *Id.*

[14] Gordon M. Snow Statement, FBI https://archives.fbi.gov/archives/news/testimony/cyber-security-threats-to-the-financial-sector (last visited March 13, 2023).

U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive. . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[15]

47.   In fact, according to the cybersecurity firm Mimecast, 90% of healthcare organizations experienced cyberattacks in the past year.[16]

48.   Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Arietis.

***Plaintiff's Experience***

49.   Plaintiff Gentry received Arietis' Breach Notice in early October 2023.

50.   Defendant deprived Plaintiff of the earliest opportunity to guard himself against the Data Breach's effects by failing to notify him about it for almost five months.

51.   As a result of its inadequate cybersecurity, Defendant exposed Plaintiff's Sensitive Information for theft by cybercriminals and sale on the dark web.

---

[15] Secret Service Warn of Targeted, Law360, https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware (last visited March 13, 2023).

[16] Protecting Personal Information: A Guide for Business, FEDERAL TRADE COMMISSION (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

52.    As a result of the Data Breach notice, Plaintiff spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach, self-monitoring his accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

53.    Plaintiff has and will spend considerable time and effort monitoring his accounts to protect himself from additional identity theft. Plaintiff fears for his personal financial security and uncertainty over what Sensitive Information was exposed in the Data Breach.

54.    Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

55.    Plaintiff suffered actual injury in the form of damages to and diminution in the value of Plaintiff's Sensitive Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

56.    Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting

15

from his Sensitive Information being placed in the hands of unauthorized third parties and possibly criminals.

57.    Plaintiff has a continuing interest in ensuring that his Sensitive Information, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

### *Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft*

58.    Plaintiff and members of the proposed Class have suffered injury from the misuse of their Sensitive Information that can be directly traced to Defendant.

59.    As a result of Defendant's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a. The loss of the opportunity to control how their Sensitive Information is used;

b. The diminution in value of their Sensitive Information;

c. The compromise and continuing publication of their Sensitive Information;

d. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e. Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f. Delay in receipt of tax refund monies;

g. Unauthorized use of stolen Sensitive Information; and

h. The continued risk to their Sensitive Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the Sensitive Information in its possession.

60. Stolen Sensitive Information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII alone can be worth up to $1,000.00 depending on the type of information obtained.

61. The value of Plaintiff's and the Class's Sensitive Information on the black market is considerable. Stolen Sensitive Information trades on the black market for years, and criminals frequently post stolen Sensitive Information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

62.    It can take victims years to spot identity theft, giving criminals plenty of time to use that information for cash.

63.    One such example of criminals using Sensitive Information for profit is the development of "Fullz" packages.

64.    Cyber-criminals can cross-reference two sources of Sensitive Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

65.    The development of "Fullz" packages means that stolen Sensitive Information from the Data Breach can easily be used to link and identify it to Plaintiff and the proposed Class' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Sensitive Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and the Class's stolen Sensitive Information is being misused, and that such misuse is fairly traceable to the Data Breach.

66.     Defendant disclosed the Sensitive Information of Plaintiff and the Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the Sensitive Information of Plaintiff and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen Sensitive Information.

67.     Defendant's failure to properly notify Plaintiff and members of the Class of the Data Breach exacerbated Plaintiff's and the Class's injury by depriving them of the earliest ability to take appropriate measures to protect their Sensitive Information and take other necessary steps to mitigate the harm caused by the Data Breach.

### *Defendant failed to adhere to FTC guidelines.*

68.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of Sensitive Information.

69.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for

fundamental data security principles and practices for business.  The guidelines explain that businesses should:

   a.  protect the sensitive consumer information that it keeps;

   b.  properly dispose of Sensitive Information that is no longer needed;

   c.  encrypt information stored on computer networks;

   d.  understand their network's vulnerabilities; and

   e.  implement policies to correct security problems.

70.    The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

71.    The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

72.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by

Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

73.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' Sensitive Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

### Defendant Violated HIPAA

74.     HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients, or in this case, consumers' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information. [17]

75.     HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII and PHI is properly maintained.[18]

---

[17] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, inter alia: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

[18] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

76.     The Data Breach itself resulted from a combination of inadequacies showing Defendant's failure to comply with safeguards mandated by HIPAA. Defendant's security failures include, but are not limited to:

a.  Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

b.  Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c.  Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d.  Failing to ensure compliance with HIPAA security standards by Defendant in violation of 45 C.F.R. § 164.306(a)(4);

e.  Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f.  Failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g.  Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h.  Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i.  Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

77.  Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations.

***Defendant Fails to Comply with Industry Standards***

78.  As noted above, experts studying cyber security routinely identify entities in possession of PII and PHI as being particularly vulnerable to

cyberattacks because of the value of the Sensitive Information which they collect and maintain.

79.     Several best practices have been identified that a minimum should be implemented by companies in possession of PII and PHI, like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data. Defendant failed to follow these industry best practices, including a failure to implement multi-factor authentication.

80.     Other best cybersecurity practices that are standard for companies like Defendant include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendant failed to follow these cybersecurity best practices, including failure to train staff.

81.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6,

PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

82.    These foregoing frameworks are existing and applicable industry standards for a company's obligations to provide adequate data security for its consumers. Upon information and belief, Defendant failed to comply with at least one––or all––of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

## CLASS ACTION ALLEGATIONS

83.    Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> All individuals residing in the United States whose Sensitive Information was compromised in the Arietis Data Breach including all those who received notice of the breach.

84.    Excluded from the Class is Defendant, their agents, affiliates, parents, subsidiaries, any entity in which Defendant have a controlling interest, any of Defendant's officers or directors, any successors, and any Judge who adjudicates this case, including their staff and immediate family.

85.    Plaintiff reserves the right to amend the class definition.

86.    This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

a.    **Numerosity**. The Class members are so numerous that joinder of all Class members is impracticable. Upon information and belief, the proposed Class includes at least thousands of members. The precise size of the Class can be determined from information in Defendant's possession and control.

b.    **Ascertainability**. Members of the Class are readily identifiable from information in Defendant's possession, custody, and control;

c.    **Typicality**. Plaintiff's claims are typical of class claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

d.    **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's interests. His interests do not conflict with the Class's interests, and he has retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

e.    **Commonality**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions that a class wide

26

proceeding can answer for the Class. Indeed, it will be necessary to answer the following questions:

    i. Whether Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's Sensitive Information;

    ii. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    iii. Whether Defendant were negligent in maintaining, protecting, and securing Sensitive Information;

    iv. Whether Defendant breached contract promises to safeguard Plaintiff's and the Class's Sensitive Information;

    v. Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

    vi. Whether Defendant's Breach Notice was reasonable;

    vii. Whether the Data Breach caused Plaintiff's and the Class's injuries;

    viii. What the proper damages measure is; and

    ix. Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

87.     Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

**COUNT I**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

88.     Plaintiff realleges paragraphs 1 through 87 as if fully set forth below.

89.     Plaintiff and members of the Class entrusted their Sensitive Information to Defendant. Defendant owed to Plaintiff and the Class a duty to exercise reasonable care in handling and using the Sensitive Information in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

90.     Defendant owed a duty of care to Plaintiff and members of the Class because it was foreseeable that Defendant's failure to adequately safeguard their Sensitive Information in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that Sensitive Information —just like the Data Breach that ultimately came to pass. Defendant

acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and the Class's Sensitive Information by disclosing and providing access to this information to unauthorized third parties and by failing to properly supervise both the way the Sensitive Information was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

91.    Defendant owed to Plaintiff and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their Sensitive Information. Defendant also owed a duty to timely and accurately disclose to Plaintiff and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and the Class to take appropriate measures to protect their Sensitive Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

92.    Defendant owed these duties to Plaintiff and members of the Class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiff's and the Class's Sensitive Information.

93.    The risk that unauthorized persons would attempt to gain access to the Sensitive Information and misuse it was foreseeable. Given that Defendant

holds vast amounts of Sensitive Information, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the Sensitive Information —whether by malware or otherwise.

94.    Sensitive Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Sensitive Information of Plaintiff and the Class and the importance of exercising reasonable care in handling it.

95.    Defendant breached its duties by failing to exercise reasonable care in supervising its employees, agents, contractors, vendors, and suppliers, and in handling and securing the Sensitive Information of Plaintiff and the Class which actually and proximately caused the Data Breach and Plaintiff's and the Class's injury. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and members of the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and members of the Class's injuries-in-fact. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and the Class have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

96.    Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff

and members of the Class actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Sensitive Information by criminals, improper disclosure of their Sensitive Information, lost benefit of their bargain, lost value of their Sensitive Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## COUNT II
## Negligence *Per Se*
## (On Behalf of Plaintiff and the Class)

97.    Plaintiff realleges paragraphs 1 through 87 as if fully set forth below.

98.    Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and the Class's Sensitive Information.

99.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customer information. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff and the members of the Class's Sensitive Information.

100.   Defendant breached its respective duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Sensitive Information.

101.   Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its consumers, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law. Defendant were in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a Data Breach.

102.   Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

103.   Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Sensitive Information.

104.   Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and the Class's Sensitive Information and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Sensitive Information Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

105.   The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

106.   Defendant violated its duty under HIPAA by failing to use reasonable measures to protect its PHI and by not complying with applicable regulations detailed *supra*. Here too, Defendant's conduct was particularly unreasonable given the nature and amount of Sensitive Information that Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

107.   But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and members of the Class, Plaintiff and members of the Class would not have been injured.

108.   The injury and harm suffered by Plaintiff and members of the Class were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their Sensitive Information.

109.   Had Plaintiff and the Class known that Defendant did not adequately protect their Sensitive Information, Plaintiff and members of the Class would not have entrusted Defendant with their Sensitive Information.

110.   Defendant's various violations and its failure to comply with applicable laws and regulations constitutes negligence *per se.*

111.   As a direct and proximate result of Defendant's negligence per se, Plaintiff and the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of Sensitive Information; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen

Sensitive Information, entitling them to damages in an amount to be proven at trial.

112. Additionally, as a direct and proximate result of Defendant's negligence per se, Plaintiff and Class members have suffered and will suffer the continued risks of exposure of their Sensitive Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Arietis fails to undertake appropriate and adequate measures to protect their Sensitive Information in its continued possession.

**COUNT III**
**Breach of Contract**
**(On Behalf of Plaintiff and the Class)**

113. Plaintiff realleges paragraphs 1 through 87 as if fully set forth below.

114. Defendant entered into various contracts with its clients, including healthcare providers, to provide software services to its clients.

115. These contracts are virtually identical to each other and were made expressly for the benefit of Plaintiff and the Class, as it was their confidential information that Defendant agreed to collect and protect through its services. Thus, the benefit of collection and protection of the Sensitive Information belonging to Plaintiff and the Class were the direct and primary objective of the contracting parties.

116.    Defendant knew that if it were to breach these contracts with its healthcare provider clients, the clients' consumers, including Plaintiff and the Class, would be harmed by, among other things, fraudulent misuse of their Sensitive Information.

117.    Defendant breached its contracts with its clients when it failed to use reasonable data security measures that could have prevented the Data Breach and resulting compromise of Plaintiff's and Class Members' Sensitive Information.

118.    As reasonably foreseeable result of the breach, Plaintiff and the Class were harmed by Defendant failure to use reasonable data security measures to store their Sensitive Information, including but not limited to, the actual harm through the loss of their Sensitive Information to cybercriminals.

119.    Accordingly, Plaintiff and the Class are entitled to damages in an amount to be determined at trial, along with their costs and attorney fees incurred in this action.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

120.    Plaintiff realleges paragraphs 1 through 87 as if fully set forth below.

121.    Plaintiff and members of the Class conferred a benefit upon Defendant in providing Sensitive Information to Defendant.

122.   Defendant appreciated or had knowledge of the benefits conferred upon it by Plaintiff and the Class. Defendant also benefited from the receipt of Plaintiff's and the Class's Sensitive Information, as this was used to facilitate its services to Plaintiff and the Class.

123.   Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Sensitive Information.

124.   Instead of providing a reasonable level of security, or retention policies, which would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

125.   Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff and the Class's Sensitive Information because Defendant failed to adequately protect their Sensitive Information.

126.   Plaintiffs and Class Members have no adequate remedy at law.

127.   Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and members of the Class all unlawful or inequitable proceeds received by them because of their misconduct and Data Breach.

**COUNT V**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Class)**

128.   Plaintiff realleges paragraphs 1 through 87 as if fully set forth below.

129.   Given the relationship between Defendant and Plaintiff and Class Members, where Defendant became guardian of Plaintiff's and Class Members' Sensitive Information, Defendant became a fiduciary by its undertaking and guardianship of the Sensitive Information, to act primarily for Plaintiff and Class Members, (1) for the safeguarding of Plaintiff's and Class Members' Sensitive Information; (2) to timely notify Plaintiff and Class Members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

130.   Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of Defendant's relationship with them—especially to secure their Sensitive Information.

131.   Because of the highly sensitive nature of the Sensitive Information, Plaintiff and Class Members would not have entrusted Defendant, or anyone in Defendant's position, to retain their Sensitive Information had they known the reality of Defendant's inadequate data security practices.

132.   Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to sufficiently encrypt or otherwise protect Plaintiff's and Class Members' Sensitive Information.

133.   Defendant also breached its fiduciary duties to Plaintiff and Class Members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

134.   As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

### COUNT VI
### Invasion of Privacy
### (On Behalf of Plaintiff and the Class)

135.   Plaintiff realleges paragraphs 1 through 87 as if fully set forth below.

136.   Plaintiff and the Class had a legitimate expectation of privacy regarding their highly confidential Sensitive Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

137.   Defendant owed a duty to its consumers, including Plaintiff and the Class, to keep this information confidential.

138.    The unauthorized acquisition (i.e., theft) by a third party of Plaintiff and Class members' Sensitive Information is highly offensive to a reasonable person.

139.    The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class disclosed their sensitive and confidential information to Defendant, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

140.   The Data Breach constitutes an intentional interference with Plaintiff and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

141.    Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

142.    Defendant acted with a knowing state of mind when it failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

143.    Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

144.    As a proximate result of Defendant's acts and omissions, the private Sensitive Information of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages (as detailed *supra*).

145.    Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their Sensitive Information are still maintained by Defendant with their inadequate cybersecurity system and policies.

146.    Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the Sensitive Information of Plaintiff and the Class.

147.    In addition to injunctive relief, Plaintiff, on behalf of himself and the other Class members, also seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

**COUNT VII**
**Violation of Florida Deceptive and Unfair Trade Practices Act**
**Fla. Stat. §§ 501.201,** *et seq.*
**(On Behalf of Plaintiff and the Class)**

148.   Plaintiff realleges paragraphs 1 through 87 as if fully set forth below.

149.   This cause of action is brought under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

150.   The purpose of FDUTPA is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

151.   Another purpose of FDUTPA is to construe consumer protection as "consistent with established policies of federal law relating to consumer protection." Fla. Stat. § 501.202(3).

152.   Plaintiff and Class members all constitute "[c]onsumers" under FDUTPA because they are all "individual[s]." Fla. Stat. § 501.203.

153.   Plaintiff and Class members each constitute an "[i]nterested party or person" under FDUTPA because they are all "affected by a violation" of FDUTPA. Fla. Stat. § 501.203.

154.   FDUTPA applies to Defendant because Defendant engages in "[t]rade or commerce" as defined as "advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or

any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 501.203.

155.   FDUTPA declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

156.   FDUTPA provides that "due consideration be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a)(1) of the Trade Commission Act." Fla. Stat. § 501.204(2).

157.   Relevant here, is that "[v]iolation[s]" of FDUTPA is broadly defined to include violations of:

a.   "Any rules promulgated pursuant to the Federal Trade Commission Act, 15 U.S.C. ss. 41 *et seq*." Fla. Stat. § 501.203.

b.   "The standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts." Fla. Stat. § 501.203.

c.   "Any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." Fla. Stat. § 501.203.

158.   Under FCRA, HIPAA (42 U.S.C. § 1302d *et seq*.), the FTCA, and Florida law (Fla. Stat. § 456.057 and § 501.171), Defendant was required by law to maintain adequate and reasonable data and cybersecurity measures to

43

maintain the security and privacy of Plaintiff's and Class members' PII. Defendant was also under an obligation expressly under Florida law, where Defendant is headquartered and managed, to adequately protect Plaintiff's and Class members' Sensitive Information.

159.   Moreover, FDUTPA requires that Defendant (1) take reasonable measures to protect and secure data in electronic form containing Sensitive Information; (2) take reasonable measures to dispose of or destroy Sensitive Information; and (3) provide notice to consumers and consumer reporting agencies subject to the FCRA when a data security incident occurs that compromises PII. Fla. Stat. §§ 501.171.

160.   Defendant violated FDUTPA by, *inter alia*:

    d.   failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class members' Sensitive Information which was a direct and proximate cause of the Data Breach;

    e.   failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

  f.  failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801, *et seq.*, which was a direct and proximate cause of the Data Breach;

  g.  omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Class members' PII; and

  h.  omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801, *et seq.*

161. Defendant's omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of their Sensitive Information.

162. Defendant intended to mislead Plaintiff and Class members and induce them to rely on its omissions.

163.   Had Defendant disclosed to Plaintiff and Class members that its data systems were not secure—and thus vulnerable to attack—Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Defendant accepted Plaintiff's and the Class's Sensitive Information while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiff and Class members acted reasonably in relying on Defendant's omissions, the truth of which they could not have discovered through reasonable investigation.

164.   Defendant acted intentionally, knowingly, maliciously, and recklessly disregarded Plaintiff's and Class members' rights.

165.   As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Sensitive Information.

166.   Plaintiff and Class members seek declaratory judgement that Defendant's practices were unreasonable and inadequate and thus caused the Data Breach.

167.   Plaintiff and Class members seek injunctive relief enjoining the wrongful acts described *supra* and requiring Defendant to use and maintain proper standards for data security including, *inter alia*, proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing. Fla. Stat. § 501.211(1).

168.   Plaintiff and Class members seek all monetary and non-monetary relief allowed by law. Plaintiff seeks actual damages, attorneys' fees, and costs under Fla. Stat. §§ 501.2105, 501.211(2).

<u>**PRAYER FOR RELIEF**</u>

Plaintiff and the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B. Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

C. Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D. Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen Sensitive Information;

E.  Awarding Plaintiff and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F.  Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G.  Awarding attorneys' fees and costs, as allowed by law;

H.  Awarding prejudgment and post-judgment interest, as provided by law;

I.  Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J.  Granting such other or further relief as may be appropriate under the circumstances.

Dated: October 20, 2023               Respectfully submitted,

                                      */s/ Joshua R. Jacobson*
                                      Joshua R. Jacobson
                                      Florida Bar No. 1002264
                                      **NORMAND PLLC**
                                      3165 McCrory Place, Ste. 175
                                      Orlando, FL 32803
                                      Telephone: (407) 603-6031
                                      jjacobson@normandpllc.com
                                      ean@normandpllc.com

                                      **TURKE & STRAUSS LLP**
                                      Samuel J. Strauss
                                      Raina Borrelli
                                      613 Williamson Street, Suite 201
                                      Madison, Wisconsin 53703

Telephone: (608) 237-1775
Facsimile: (608) 509-4423
sam@turkestrauss.com
raina@turkestrauss.com

***Attorneys for Plaintiff and Proposed
Class***